**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>RAIT FUNDING, LLC,<br>a Delaware limited liability company, *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 19-11915 (BLS)<br>(Jointly Administered)<br><br>**Objection Deadline: March 11, 2020 at 4:00 p.m. ET**<br>**Hearing Date: March 18, 2020 at 10:00 a.m. ET** |

**DEBTORS' MOTION FOR ORDER IN AID OF
CONSUMMATION OF THE CONFIRMED CHAPTER 11 PLAN
APPROVING AN INITIAL DISTRIBUTION TO CREDITORS**

The above-captioned debtors and debtors in possession (the "Debtors"), by and through their undersigned counsel, hereby move (the "Motion") pursuant to sections 1142(b) and 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), for entry of an order, substantially in the form attached as Exhibit D hereto (the "Proposed Order"), in aid of consummation of the *Debtors' Joint Chapter 11 Plan* [D.I. 294] (including all exhibits thereto, and as amended, supplemented, or modified, the "Plan"),[2] authorizing the Plan Administrator to make an initial distribution to holders of allowed unsecured claims in the aggregate amount of $142 million (the "Initial Distribution") within ten business days following

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: RAIT Funding, LLC, a Delaware limited liability company (9983); RAIT Financial Trust, a Maryland real estate investment trust (9819); RAIT General, Inc., a Maryland corporation (9987); RAIT Limited, Inc., a Maryland corporation (9773); Taberna Realty Finance Trust, a Maryland real estate investment trust (3577); RAIT JV TRS, LLC, a Delaware limited liability company (3190); and RAIT JV TRS Sub, LLC, a Delaware limited liability company (4870). The mailing address for all Debtors is Two Logan Square, 100 N. 18th Street, 23rd Floor, Philadelphia, Pennsylvania 19103 (Attn: John J. Reyle).

[2] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Plan.

1

the Effective Date of the Plan (currently projected for March 27, 2020). In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1. This Court has subject matter jurisdiction to consider and determine this Motion pursuant to 28 U.S.C. §§ 1334 and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are sections 105(a) and 1142(b) of the Bankruptcy Code.

## BACKGROUND

### A. The Chapter 11 Cases

4. On August 30, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief with this Court under chapter 11 of the Bankruptcy Code. The Debtors continued to operate their businesses and are managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. By order of the Court entered on September 4, 2019, the Debtors' cases are being jointly administered pursuant to Bankruptcy Rule 1015 for procedural purposes only [D.I. 25].

5. On September 17, 2019, the Office of the United States Trustee filed the Notice appointing the Creditors' Committee in these chapter 11 cases [D.I. 65]. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

6. On September 27, 2019, each of the Debtors filed their schedules of assets and liabilities and statements of financial affairs [D.I. 86 – 99].

7. On November 18, 2019, the Court entered the *Order (I) Establishing Deadlines for Filing Proofs of Claim, (II) Establishing Deadlines for Filing Requests for Payment of Postpetition Administrative Expenses, (III) Approving Form and Manner of Notice Thereof, and (IV) Granting Related Relief* [D.I. 199] (the "Bar Date Order") establishing various dates by which proofs of claim must be filed in these Chapter 11 Cases, including (i) December 21, 2019 for both the General Bar Date and the Administrative Claims Bar Date (for Administrative Claims arising prior to November 18, 2019), and (ii) February 26, 2020 for the Governmental Bar Date.  A complete list of the Bar Dates may be found in the *Notice of Deadline for Filing Proofs of Claim* [D.I. 209] (the "Bar Date Notice").

8. On January 24, 2020, the Court entered the *Order Extending the Time to Assume or Reject Unexpired Lease of Non-Residential Real Property* [D.I. 369], extending from December 28, 2019 through and including March 27, 2020 the deadline for the Debtors to assume or reject the lease with Two Logan Square Associates, LP relating to the Debtors' headquarters in Philadelphia, Pennsylvania.

### B. The Asset Sale

9. The Debtors filed these chapter 11 cases with the goal of consummating a sale of all or substantially all of their assets through section 363 of the Bankruptcy Code.  To this end, on August 30, 2019, Debtors RAIT Financial Trust, RAIT General, RAIT Limited, and Taberna collectively, the "Debtor Sellers") and the Purchaser entered into the Purchase Agreement, whereby the Purchaser agreed to serve as stalking-horse bidder for the Debtor Sellers' assets.  On September 9, 2019, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Establishing the Bidding Procedures, Including Approval of A Break-Up Fee and Expense Reimbursement, (II) Approving Sale of Substantially All of the Debtors Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, and (III) Granting Related Relief* [D.I. 53] (the "Sale

3

Motion"). Through the Sale Motion, the Debtors requested approval of bidding procedures related to the sale of the Purchased Assets as more fully described and pursuant to the terms of the Purchase Agreement.

10. Under the Purchase Agreement, the Purchaser agreed to purchase, directly or indirectly (including through one or more of Stalking Horse Purchaser's affiliates), (i) from RAIT General and RAIT Limited the general partner and limited partner interests in RAIT Partnership, as a result of which the Stalking Horse Purchaser (or one or more of its affiliates) will indirectly acquire the equity interests held by RAIT Partnership in certain of its subsidiaries (as set forth in the Stalking Horse Agreement), and (ii) certain assets owned by certain of the Debtors ((i) and (ii), collectively, the "Purchased Assets") for the cash purchase price of approximately $174.4 million, subject to certain adjustments set forth in the Purchase Agreement and subject to higher and better offers pursuant to a Court-approved auction and sale process, free and clear of all liens, claims, encumbrances and interests (the "Sale").

11. On October 2, 2019, the Court entered the *Order (I) Establishing the Bidding Procedures Including Approval of a Break-Up Fee and Expense Reimbursement, and (II) Granting Related Relief* [D.I. 126]. In consultation with the Creditors Committee, the Debtors determined that they had not received any qualified competing bids and, as a result, designated the Purchaser as the Winning Bidder. By Order entered on December 6, 2019, the Court (i) authorized and approved the Purchase Agreement, (ii) approved the Sale of substantially all of the Debtors' assets free and clear of all liens, claims, interests, and encumbrances, (iii) authorized the Debtors to consummate certain transactions related to the Sale, and (iv) granted related relief [D.I. 268]. The Sale closed on December 23, 2019.

ACTIVE.122127129.04

### C. The Chapter 11 Plan[3]

12. On October 14, 2019, the Debtors filed their *Joint Chapter 11 Plan* [D.I. 139] and disclosure statement with respect thereto [D.I. 140] (as amended, supplemented or modified from time to time, the "<u>Disclosure Statement</u>"). On December 17, 2019, the Court entered an order [D.I. 291] approving the Disclosure Statement as containing adequate information with respect to the Plan in accordance with section 1125 of the Bankruptcy Code, and scheduling a hearing to consider confirmation of the Plan on January 29, 2020. The solicitation version of the Plan (reflecting certain amendments requested by parties in interest and agreed by the Debtors at or prior to the hearing on approval of the Disclosure Statement) was filed on December 17, 2019 [D.I. 294].

13. The Plan provides for the payment in full of (i) all allowed administrative and priority claims against the Debtors, and (ii) all Class 4 claims (Senior Note Claims and Senior Note Trustee Claims). (Plan Art. II and § 3.2(c)-(d).)

14. The Plan provides for payment of Class 6 (Subordinated Taberna Note Claims) and Class 7 (Subordinated RF Junior Note Claim and RAIT Parent Subordinated Guaranty Claim) claims according to the following waterfall: (i) the first $12.25 million of Distribution Proceeds to Class 6; (ii) the first $1.75 million of any recovery from the Second-Half Sale Transaction Escrow to Class 7; (iii) the remaining balance (up to $250,000) of any recovery from the Second-Half Sale Transaction Escrow to Class 6; (iv) after the funding of (a) the Professional Fee Escrow Account, (b) the Disputed Claims Reserve, and (c) the Wind-Down Reserve, payment to Class 7 until it has received the full Allowed RAIT Funding Claim Amount ($23.75

---

[3] This is a summary of the Plan. To the extent that the Motion and the Plan differ, the Plan controls.

million); and (v) payment to Class 6 until it has received the full Allowed Taberna Note Claim Amount ($18,670,743).  (*See* Plan § 3.2(f)-(g).)

15. For Class 5 claims (General Unsecured Claims), the Plan provides, at the Debtors' election, for either (i) payment in full in cash of the Allowed amount, or (ii) Reinstatement of the claim.  (Plan § 3.2(e).)  As defined in the Plan, "Reinstatement" of a Claim means "that the Claim . . . shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code" (Plan § 1.1(95))—in other words, that the Plan "leaves unaltered the legal, equitable, and contractual rights to which such claim . . . entitles the holder of such claim . . . ," 11 U.S.C. § 1124(1).

16. The Court entered the Confirmation Order on January 30, 2020, which approved the appointment of Lyle Bauck of M-III Advisory Partners, L.P. as the Plan Administrator. (Conf. Ord. ¶ 22.)  The Confirmation Order also made a change to the Plan, which had been requested by the Creditors' Committee, requiring that an initial distribution to holders of Allowed claims be made not later than ten Business Days after the Effective Date.  (Conf. Ord. Ex. A ¶ 6 (amending Section 6.1(a) of the Plan regarding delivery of Distributions).)

17. In consultation with their advisors and the Plan Administrator, the Debtors have determined that (i) they will elect to Reinstate the Class 5 General Unsecured Claims identified on <u>Exhibit A</u> hereto, (ii) the Allowed Claims identified on <u>Exhibit B</u> hereto are entitled to inclusion in the Initial Distribution, and (iii) the Claims identified on <u>Exhibit C</u> hereto are Disputed Claims within the meaning of the Plan, for which a Disputed Claim Reserve will be created on the Effective Date of the Plan.  Subject to the entry of the Proposed Order on this Motion, the Debtors project that the Effective Date will occur on March 27, 2020.

6

**RELIEF REQUESTED**

18. By this Motion, the Debtors seek entry of an order in aid of consummation of the Plan approving an Initial Distribution under the Plan in the aggregate amount of $142 million, to holders of Allowed unsecured claims identified on Exhibit B hereto. The balance of the Debtors' cash on hand, approximately $20.9 million, will be used by the Plan Administrator (i) to pay or reserve for Allowed Administrative Claims (approximately $6.3 million based on present estimates, inclusive of final payroll and employee obligations, and Professional Fee Escrow Account fudning), (ii) to fund the Disputed Claims Reserve (on account of the Disputed Claims identified on Exhibit C hereto) and the Wind-Down Reserve, and (iii) to make any supplemental distributions in accordance with the terms and conditions of the Plan.

**BASIS FOR RELIEF REQUESTED**

19. Section 1142 of the Bankruptcy Code, which governs implementation of chapter 11 plans, provides, in pertinent part, that the Court may direct "the debtor and any other necessary party to . . . perform any . . . act . . . that is necessary for the consummation of the plan." 11 U.S.C. § 1142(b). In addition, section 105(a) of the Bankruptcy Code authorizes the Court to "issue any order . . . that is necessary or appropriate to carry out the provisions of th[e Bankruptcy Code]," and to "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders . . . ." 11 U.S.C. § 105(a).

20. Compliance with the Plan's requirement of a prompt initial distribution to creditors requires advance planning as to the timing of the Effective Date, as well as the amount of cash that will be included in the initial distribution and held back for funding of required reserves under the Plan. But save for the Disputed Claims Escrow (which is to be established by the Debtors) and the Professional Fee Reserve Amount (which will be determined procedurally under the Plan), matters concerning distribution and reserve amounts are ultimately the

responsibility of the Plan Administrator, subject to the applicable terms and conditions of the Plan. And prior to the Effective Date of the Plan, the Plan Administrator is not yet officially in a position to make determinations as to such matters (though he is free to, and has been, working with the Debtors and their other professionals on such matters in his capacity as current financial advisor to the Debtors). Thus, out of an abundance of caution in order to ensure the Plan Administrator has clear direction on the Effective Date of the Plan regarding the Initial Distribution that is required of him—and also, in the interest of transparency, to manage the expectations of the creditors who will and will not be participating in that Initial Distribution—the Debtors believed it appropriate to seek relief from the Court authorizing and directing the Plan Administrator to make the Initial Distribution in an amount certain.

21.    Such relief is plainly authorized by sections 1142(b) and 105(a) of the Bankruptcy Code, quoted above, because (i) the making of a prompt initial distribution by the Plan Administrator is expressly required by the Plan, and (ii) fixing the amount of that distribution is both necessary and appropriate to facilitate the Plan Administrator's compliance with this requirement.

22.    As will be established at the hearing on this Motion, to the extent necessary, the proposed amount of the Initial Distribution was determined by the Debtors and their advisors, in consultation with the Creditors' Committee and RSA Counterparties, as striking an appropriate balance between, on the one hand, maximizing near-term distributions to creditors, and on the other hand, ensuring the Plan Administrator will have sufficient reserves for payment of Disputed Claims (to the extent they become Allowed), for the wind-down of the chapter 11 cases, and for any unforeseen contingencies that might arise during that process.

8

## NOTICE

23.    Notice of this Motion shall be provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Creditors' Committee; (iii) the holders of Claims identified on Exhibits A, B, and C hereto; (iv) the Plan Administrator, and (v) any parties that have requested service of papers in accordance with Rule 2002 of the Federal Rules of Bankruptcy Procedure. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of an order substantially in the form of the Proposed Order attached as Exhibit D hereto granting the relief requested in this Motion and providing the Debtors such other and further relief as is just and proper.

| | |
|---|---|
| Dated: March 4, 2020<br>Wilmington, Delaware | **FAEGRE DRINKER BIDDLE & REATH LLP**<br><br>*/s/ Patrick A. Jackson*<br>Patrick A. Jackson (Del. Bar No. 4976)<br>222 Delaware Avenue, Suite 1410<br>Wilmington, DE 19801<br>Tel: (302) 467-4200<br>Fax: (302) 467-4201<br>Patrick.Jackson@faegredrinker.com<br><br>-and-<br><br>Michael P. Pompeo (admitted *pro hac vice*)<br>Brian P. Morgan (admitted *pro hac vice*)<br>1177 Avenue of the Americas, 41st Floor<br>New York, NY 10036-2714<br>Tel: (212) 248-3140<br>Fax: (212) 248-3141<br>Michael.Pompeo@faegredrinker.com<br>Brian.Morgan@faegredrinker.com<br><br>*Counsel to the Debtors*<br>*and Debtors in Possession* |

ACTIVE.122127129.04